## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## (DALLAS DIVISION)

| | | |
|---|---|---|
| **CATHRINE VAN ROOYEN and CORNELIUS JOHANNES VAN ROOYEN,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | |
| **GREYSTONE HOME BUILDERS, LLC; PHILLIP RYAN, LLC; PHILLIP RYAN TEXAS, LLC; SYCAMORE HOMES, LLC; SEAN RYAN; DAVID CLEMONS; SEAN TISSUE; JUSTIN MCRAE and ANGELA REITER,** | § § § § § § § § | **Civil Action No. 17-2298** |
| **Defendants.** | § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW Plaintiffs CATHRINE VAN ROOYEN ("C. VAN ROOYEN") and CORNELIUS JOHANNES VAN ROOYEN ("C.J. VAN ROOYEN") and file this *Original Complaint* (the "Complaint") against Defendants GREYSTONE HOME BUILDERS, LLC ("GREYSTONE"); PHILLIP RYAN, LLC ("PHILLIP RYAN"); PHILLIP RYAN TEXAS, LLC ("PHILLIP RYAN - TX"); SYCAMORE HOMES, LLC ("SYCAMORE") SEAN RYAN ("RYAN"); DAVID CLEMONS ("CLEMONS"); SEAN TISSUE ("TISSUE"); JUSTIN MCRAE ("MCRAE") and ANGELA REITER ("REITER"), and in support of said Complaint would respectfully show the Court as follows:

## I.     THE PARTIES

1.     C. VAN ROOYEN is a foreign individual who resides in Roodeplaat, Pretoria, Republic of South Africa.

2.     C.J. VAN ROOYEN is a foreign individual who resides in Roodeplaat, Pretoria, Republic of South Africa.

3.     GREYSTONE is a Michigan limited liability company who is registered to business in the State of Texas, and may be served with process by and through its registered agent Mr. Sean Tissue at 2800 Livernois Road, Suite 220D, Troy, Michigan 48083, or wherever else he may be found.

4.     PHILLIP RYAN is a Michigan limited liability company who may be served with process by and through its registered agent Mr. Sean Tissue at 12900 Hall Road, Suite 270, Sterling Heights, Michigan 48313.

5.     PHILLIP RYAN – TX is a Texas limited liability company who may be served with process by and through its registered agent Mr. William Gilmour at 3131 McKinney Avenue, Suite 600, Dallas, Texas 75204, or wherever else he may be found.

6.     SYCAMORE is a Michigan limited liability company who may be served with process by and through its registered agent Bryan Mushaweh at 12900 Hall Road, Suite 270, Sterling Heights, Michigan 48313, or wherever else he may be found.

7.     RYAN is an individual who resides in Michigan and may be served at his place of business located at 2800 Livernois Road, Suite 220D, Troy, Michigan 48083.

8.     TISSUE is an individual who resides in Michigan and may be served at his place of business located at 2800 Livernois Road, Suite 220D, Troy, Michigan 48083.

9.     MCRAE is an individual who resides in Michigan and may be served at his place of business located at 12900 Hall Road, Suite 270, Sterling Heights, Michigan 48313, or wherever else he may be found.

10.    CLEMONS is an individual who resides in Michigan and may be served at his place of business located at 2800 Livernois, Building D, Suite 220, Troy, Michigan 48083, or wherever else he may be found.

11.    REITER is an individual who resides in Michigan and may be served at her place of business located at 12900 Hall Road, Suite 270, Sterling Heights, Michigan 48313, or wherever else she may be found

## II.     JURISDICTION AND VENUE

12.    This Court has jurisdiction over the persons and subject matter of this proceeding pursuant to 28 U.S.C. §§1331, 1332, 1337, 1367; and 18 U.S.C. §1964(c). The citizenship of Plaintiffs and Defendants are completely diverse, and the amount in controversy exceeds $75,000.00 exclusive of costs.

13.    Pursuant to 28 U.S.C. §1391(b)(2) and/or (3); and 18 U.S.C. §1965, venue is proper in this Court.

## III.    FACTUAL ALLEGATIONS

14.    In or about early 2016, C. VAN ROOYEN and C.J. VAN ROOYEN (hereinafter collectively referred to as the "VAN ROOYENS") received information from Peter Weaver related to an opportunity to purchase a single family residence built by GREYSTONE in Dallas, Texas. Mr. Weaver introduced the VAN ROOYENS to REITER who identified herself as a transaction coordinator for SYCAMORE. Later, REITER introduced the VAN ROOYENS to MCRAE who held himself out to be an officer of GREYSTONE (despite the fact MCRAE's

initial communications with the VAN ROOYENS were via an e-mail address of Justin@sycamorepg.com).

15.     The marketing materials VAN ROOYENS received from Peter Weaver (who held himself out as a representative of GREYSTONE) during a personal meeting in Johannesburg, which described GREYSTONE's construction of single family residences in an area of Dallas, Texas described as the South Oak Development (the "Marketing Materials"). A true and correct copy of said Marketing Materials are attached hereto as "Exhibit 1," and are incorporated by reference as if fully set forth herein. *See* Exhibit 1, pg. 1.

16.     The Marketing Materials promised the VAN ROOYENS the highest quality new construction rental properties which would provide the VAN ROOYENS with exceptional returns on the VAN ROOYENS' investment. *See* Exhibit 1, pg. 2. The Marketing Materials also represented to the VAN ROOYENS that GREYSTONE would provide its "management platform" after GREYSTONE constructed the investment property to maintain the investment property to the highest standards. *See* Exhibit 1, pg. 2.

17.     The Marketing Material also described GREYSTONE's business model of "build-to-rent" program whereby GREYSTONE builds new single family residences in areas of the United States (Florida, North Carolina, and Texas) where population growth is strong and demand for rental homes is high. *See* Exhibit 1, pg. 3.

18.     The Marketing Material also represented to the VAN ROOYENS that PHILLIP RYAN would sign a three (3) year rental assurance agreement whereby PHILLIP RYAN would guaranty that the VAN ROOYENS would receive three (3) years of rental payments if they paid GREYSTONE to build a house in the South Oak Development. *See* Exhibit 1, pg. 5.

19.     The Marketing Material also represented to the VAN ROOYENS that GREYSTONE would build the house within six (6) months. *See* Exhibit 1, pg. 5.

20.     The Marketing Material also represented to the VAN ROOYENS that the VAN ROOYENS should expect a return of 30.80% to 47.20% on their investment in a home built by GREYSTONE over a three (3) year period. *See* Exhibit 1, pg. 12.

21.     The Marketing Material further represented that GREYSTONE will sign a master lease for the home and will pay the stated rent for the first three (3) years. *See* Exhibit 1, pg. 14.

22.     On or about February 2, 2016, REITER e-mailed the VAN ROOYENS a document entitled "Step-by-Step Process for Buying Your U.S. Investment Property" (the "Process Guide"). A true and correct copy of said Process Guide is attached hereto as "Exhibit 2," and is incorporated by reference as if fully set forth herein. In the e-mail delivering the Process Guide to the VAN ROOYENS, REITER's signature block indicates she is the "Transaction Coordinator" for SYCAMORE.

23.     The Process Guide made various representations, including, but not limited to, a representation the Sale Agreement (as hereinafter defined) guaranteed GREYSTONE's conveyance of the property with "clear title." *See* Exhibit 2, pg. 1. The Process Guide also represented to the VAN ROOYENS that GREYSTONE would complete the construction of the home on the property within six (6) months after the VAN ROOYENS paid a deposit. *See* Exhibit 2, pg. 2.

24.     The Process Guide also represents that after closing on the property, the VAN ROOYENS would be contacted by "Phillip Ryan Real Estate Services, a wholly owned subsidiary of Greystone" to provide the VAN ROOYENS with a Property Management Agreement for the VAN ROOYENS to sign. *See* Exhibit 2, pg. 3. Finally, the Process Guide

represented to the VAN ROOYENS that GREYSTONE "assured" rent on the property for thirty-six (36) months after closing. *See* Exhibit 2, pg. 5.

25.     Based upon the representations made by Peter Weaver and REITER on behalf of GREYSTONE in the Marketing Materials and the Process Guide, on or about February 2, 2016, the VAN ROOYENS executed a Real Estate Purchase and Sale Agreement (the "Sale Agreement") wherein the VAN ROOYENS agreed to pay GREYSTONE the sum of $185,000 for the purchase and construction of a 1,685 square foot home allegedly located at 2013 Bumelia Court, Dallas, Texas 75253 (the "Bumelia Property"). A true and correct copy of said Sale Agreement is attached hereto as "Exhibit 3," and is incorporated by reference as if fully set forth herein. *See* Exhibit 3.

26.     Upon information and belief, the Sale Agreement was executed by MCRAE on behalf of GREYSTONE.

27.     The Sale Agreement required the VAN ROOYENS to wire a deposit in the amount of $46,250.00 within three business days of signing the Sale Agreement (the "Deposit"). *See* Exhibit 3, pg. 1. According to the Sale Agreement, the Deposit was to be held in an escrow account. *See* Exhibit 3, pg. 1. The Sale Agreement stated GREYSTONE would convey the Bumelia Property to the VAN ROOYENS via warranty deed. *See* Exhibit 3, pg. 1.

28.     In the Sale Agreement, GREYSTONE represented it would complete construction and obtain a certificate of occupancy for the Bumelia Property within six (6) months of the execution of the Sale Agreement. *See* Exhibit 3, pg. 2. GREYSTONE also represented in the Sale Agreement that it would deliver an Owner's Title Policy insuring the VAN ROOYENS' title to the Bumelia Property subject to standard exceptions. *See* Exhibit 3, pg. 2.

29.     Contemporaneously with the execution of the Sales Agreement, the VAN ROOYENS executed an Earnest Money Escrow Agreement designating PHILLIP RYAN as the escrow agent for the transaction between GREYSTONE and the VAN ROOYENS (the "Escrow Agreement"). A true and correct copy of said Escrow Agreement is attached hereto as "Exhibit 4," and is incorporated by reference as if fully set forth herein. The Escrow Agreement both instructs PHILLIP RYAN to release the Deposit to GREYSTONE within forty-eight (48) hours of its receipt of the same, or to hold the Deposit until the parties issue joint written instructions and/or a court of competent jurisdiction orders PHILLIP RYAN to deposit the Deposit into the registry of the Court. *See* Exhibit 4, pg. 1.

30.     Upon information and belief, MCRAE signed the Escrow Agreement on behalf of GREYSTONE. The VAN ROOYENS paid a $350.00 escrow fee to PHILLIP RYAN.

31.     The VAN ROOYENS executed to the Sale Agreement and wired the Deposit to PHILLIP RYAN. GREYSTONE acknowledged receipt of the Deposit in a document entitled Receipt of Deposit (the "Deposit Receipt"). A true and correct copy of said Deposit Receipt is attached hereto as "Exhibit 5," and is incorporated by reference as if fully set forth herein. The Deposit Receipt identifies the address of the property the VAN ROOYENS as 2013 Devilwood Court, Dallas, Texas 75253 (the "Devilwood Property"). *See* Exhibit 5.

32.     When the VAN ROOYENS brought the error in the Deposit Receipt to the attention of REITER, REITER explained the Bumelia Property had been sold to another investor and GREYSTONE decided to substitute the Devilwood Property instead. When the VAN ROOYENS complained about GREYSTONE substituting the Devilwood Property for the Bumelia Property without consulting them, Peter Weaver on behalf of GREYSTONE offered to allow the VAN ROOYENS to purchase a property located on Shortleaf Drive and informed the

VAN ROOYENS the Devilwood Property had also been sold to another investor. REITER and MCRAE were copied on this communication from Peter Weaver to the VAN ROOYENS.

33.     As an inducement to entice the VAN ROOYENS to leave their deposit with GREYSTONE and not terminate the transaction with GREYSTONE, Mr. Weaver represented construction had commenced on the lots on Shortleaf Drive so the lots on Shortleaf Drive would be completed a month ahead of any other lot the VAN ROOYENS could purchase.

34.     Two facts illustrate the brazenness of Defendants' fraudulent representations to the VAN ROOYENS related to the Bumelia Property and the Devilwood Property. There is not a property located in Dallas, Texas with the address of 2013 Bumelia Court, Dallas, Texas 75253 nor is there a property located in Dallas, Texas with an address of 2013 Devilwood Court, Dallas, Texas 75253. Simply put, Defendants were selling real estate which did not exist.

35.     MCRAE acting by and through GREYSTONE provided the VAN ROOYENS an amended Sale Agreement due to the Bumelia Property and Devilwood Property being presold and the VAN ROOYENS agreeing to purchase the property located at 13404 Shortleaf Drive, Dallas, Texas 75253 (the "Shortleaf Property") based in part upon the representation that GREYSTONE had already commenced construction on the Shortleaf Property and it would therefore be ready at least a month earlier than any other property.

36.     On or about February 16, 2016, the VAN ROOYENS and MCRAE on behalf of GREYSTONE executed an Addendum to Purchase and Sale Agreement (the "Sale Addendum"). A true and correct copy of said Sale Addendum is attached hereto as "Exhibit 6," and is incorporated by reference as if fully set forth herein. It is noteworthy that the Bumelia Property and the Shortleaf Property appear to have the same legal description in the Sale Agreement and the Sale Addendum. *Compare* Exhibit 3, pg. 1 and Exhibit 6.

37.     In an effort to perpetuate their fraudulent scheme to sell the VAN ROOYENS the Shortleaf Property, GREYSTONE issued an amended deposit receipt which was executed by an unknown person as the "Controller" of GREYSTONE (the "Amended Receipt"). A true and correct copy of said Amended Receipt is attached hereto as "Exhibit 7," and is incorporated by reference as if fully set forth herein.

38.     Because Peter Weaver, acting on behalf of GREYSTONE, recommended forming a limited liability company to hold title to the Shortleaf Property and for the VAN ROOYENS to establish a bank account in the United States, the VAN ROOYENS paid PHILLIP RYAN the sum of $800.00 to form an entity known as JASMINE GREEN, LLC ("JGL").

39.     On March 4, 2016, REITER e-mailed the VAN ROOYENS describing the amount of money the VAN ROOYENS would need to set up a limited liability company and establish a bank account in the United States, and mentioned the VAN ROOYENS should contact CLEMONS who REITER identified as the Client Services Manager for GREYSTONE.

40.     The VAN ROOYENS paid PHILLIP RYAN to form JGL and to establish a bank account in the United States on March 11, 2016. A true and correct redacted copy of the Foreign Exchange Payment Advice evidencing this payment is attached hereto as "Exhibit 8," and is incorporated by reference as if fully set forth herein.

41.     Also on or about March 11, 2016, acting in accordance with the advice of various agents of GREYSTONE the VAN ROOYENS paid GREYSTONE $500.00 to open a bank account with Citizens Bank in order to have a local account to collect the rent revenues from the Shortleaf Property (the "Citizens Bank Account").

42.     On or about March 21, 2016, the VAN ROOYENS received a "construction update" from REITER and noticed REITER changed her e-mail address from an e-mail address owned by SYCAMORE to one associated with GREYSTONE.

43.     On May 5, 2016, a certificate of formation for JGL was filed with the Texas Secretary of State naming PHILLIP RYAN – TX as the registered agent and listing the VAN ROOYENS as the managing members (the "Certificate of Formation"). A true and correct file-stamped copy of said Certificate of Formation is attached hereto as "Exhibit 9," and is incorporated by reference as if fully set forth herein.

44.     The Certificate of Formation was filed by REITER. The VAN ROOYENS paid PHILLIP RYAN the sum of $300.00 to file the Certificate of Formation.

45.     GREYSTONE sent the VAN ROOYENS a second addendum to the Sale Agreement indicating the new purchaser of the Shortleaf Property would be JGL (the "Second Addendum"). A true and correct copy of said Second Addendum is attached hereto as "Exhibit 10," and is incorporated by reference as if fully set forth herein.

46.     In apparent attempt to assure the VAN ROOYENS construction of the Shortleaf Property was underway, on May 9, 2016, REITER from GREYSTONE sent the VAN ROOYENS pictures of the construction of a house with a foundation and the beginning of framing (the "Construction Photos"). A true and correct copy of said Construction Photos are attached hereto as "Exhibit 11," and are incorporated by reference as if fully set forth herein. REITER also represented she projected the VAN ROOYENS would be able to close on the Shortleaf Property in July 2016.

47.     On or about May 10, 2016, REITER sent the VAN ROOYENS documents filed with the Texas Secretary of State to form JGL as well as an operating agreement for JGL which

REITER instructed the VAN ROOYENS to sign and return to her. REITER also indicated CLEMONS would be contacting them shortly (the "Initial Operating Agreement"). By having the VAN ROOYENS execute the Initial Operating Agreement, REITER effectively removed the VAN ROOYENS from having operational control over JGL and instead transferred operational control of JGL to PHILLIP RYAN.

48.     On or about June 2, 2016, CLEMONS sent an e-mail to the VAN ROOYENS wherein he introduced himself and provided the VAN ROOYENS with a property management agreement wherein the VAN ROOYENS agreed PHILLIP RYAN would manage the Shortleaf Property for the VAN ROOYENS (the "Initial Management Agreement"). A true and correct copy of said Initial Management Agreement is attached hereto as "Exhibit 12," and is incorporated by reference as if fully set forth herein.

49.     On June 4, 2016, CLEMONS informed the VAN ROOYENS the construction on the Shortleaf Property was delayed but would probably close on or about July 19, 2016.

50.     On or about July 11, 2016, the VAN ROOYENS executed a third addendum to the Sale Agreement in their individual capacities and as members of JGL (the "Third Addendum"). A true and correct copy of said Third Addendum is attached hereto as "Exhibit 13," and is incorporated by reference as if fully set forth herein. Upon information and belief, MCRAE executed the Third Addendum on behalf of GREYSTONE.

51.     On July 25, 2016, CLEMONS informed the VAN ROOYENS the construction of the Shortleaf Property was delayed by weather but would now be complete at the end of August 2016.

52. On August 29, 2016, CLEMONS informed the VAN ROOYENS the construction of the Shortleaf Property had been delayed again but he expected the construction to be complete at the end of September 2016 with a closing to occur on or about November 11, 2016.

53. In furtherance of the fraud and under the false representation from CLEMONS of GREYSTONE that construction of the Shortleaf Property had been delayed, CLEMONS from GREYSTONE requested the VAN ROOYENS execute another addendum to the Sale Agreement indicating the completion date for the Shortleaf Property would be October 30, 2016.

54. On or about September 9, 2016, CLEMONS acting on behalf of PHILLIP RYAN – TX sent the VAN ROOYENS another property management agreement to be executed by the VAN ROOYENS on behalf of JGL (the "New Management Agreement"). A true and correct copy of said New Management Agreement is attached hereto as "Exhibit 14," and is incorporated by reference as if fully set forth herein.

55. Instead of PHILLIP RYAN managing the Shortleaf Property as set forth in the Initial Management Agreement, the New Management Agreement stated PHILLIP RYAN – TX would manage the Shortleaf Property. The New Management Agreement is signed by CLEMONS as "Manager" of PHILLIP RYAN – TX.

56. On or about September 9, 2016, CLEMONS acting on behalf of PHILLIP RYAN – TX sent the VAN ROOYENS an Amended and Restated Operating Agreement for JGL, which CLEMONS instructed the VAN ROOYENS to sign (the "Amended Operating Agreement"). A true and correct copy of said Amended Operating Agreement is attached hereto as "Exhibit 15," and is incorporated by reference as if fully set forth herein. By having the VAN ROOYENS execute the Amended Operating Agreement, CLEMONS transferred operational control of JGL from PHILLIP RYAN to PHILLIP RYAN – TX.

57.     CLEMONS explained the need for the Amended Operating Agreement was due to Citizens Bank (the bank at which GREYSTONE allegedly opened an account on behalf of the VAN ROOYENS) was going to charge "new" and exorbitant fees and so GREYSTONE was moving the VAN ROOYENS account to Comerica Bank, and Comerica Bank required the VAN ROOYENS to execute a number of amended documents related to the Shortleaf Property transaction. Upon information and belief, CLEMONS closed the Citizens Bank Account.

58.     Additionally, and in furtherance of their fraudulent acts, TISSUE acting on behalf of GREYSTONE sent the VAN ROOYENS a guarantee of residential lease agreement wherein GREYSTONE guaranteed three (3) years of lease payments related to the Shortleaf Property in the amount of $1,550.00 per month conditioned upon the VAN ROOYENS' execution of the Management Agreement with PHILLIP RYAN – TX (the "Lease Guaranty"). A true and correct copy of said Lease Guaranty is attached hereto as "Exhibit 16," and is incorporated by reference as if fully set forth herein.

59.     On or about October 28, 2016, CLEMONS sent the VAN ROOYENS pictures of what he purported to be the nearly completed construction of the Shortleaf Property (the "Completion Pictures") in order to convince the VAN ROOYENS the construction of the Shortleaf Property was proceeding albeit a little behind the schedule set forth in the Third Addendum. A true and correct copy of said Completion Pictures are attached hereto as "Exhibit 17," and are incorporated by reference as if fully set forth herein.

60.     On November 18, 2016, the VAN ROOYENS offered to pay cash for the Shortleaf Property in order to alleviate any issues related to foreign investors obtaining financing for the purchase of real estate in the United States.

61.     On November 23, 2016, CLEMONS informs the VAN ROOYENS a cash purchase of the Shortleaf Property is certainly a viable option, so the VAN ROOYENS continue their application for tax clearance at the South African Reserve Bank (due to exchange controls under the laws of South Africa) which causes the VAN ROOYENS to incur additional charges of $400.00 to produce audited books to obtain tax clearance.

62.     In light of CLEMONS assertion the VAN ROOYENS cash purchase of the Shortleaf Property was a viable option, the VAN ROOYENS demand an update from GREYSTONE related to the status of the construction of the Shortleaf Property. No one from GREYSTONE responds.

63.     On November 28, 2016, GREYSTONE issues a letter to the VAN ROOYENS via e-mail stating that because of "uncertainty in securing your long term financing on the property, Greystone Home Builders, LLC, will be unable to close on the property that is the subject of the above-referenced contract" (the "November Letter"). A true and correct copy of said November Letter is attached hereto as "Exhibit 18," and is incorporated by reference as if fully set forth herein. The November Letter also indicated that GREYSTONE would return the Deposit to the VAN ROOYENS on March 1, 2017.

64.     After making an offer to purchase the Shortleaf Property for cash, the statements by GREYSTONE in the November Letter were nonsensical. Further, the November Letter provided no explanation regarding why it would take GREYSTONE three (3) months to refund the Deposit. Even after the November Letter, throughout December 2016 and into January 2017 CLEMONS continued toying with the VAN ROOYENS and a possible closing if the VAN ROOYENS would pay for the Shortleaf Property in cash in various e-mails in which he copied

MCRAE and Skype conversations, all the while making up more excuses why construction had been delayed.

65.     The fraudulent nature of Defendants' scheme is revealed by a review of the official public records of Dallas County, Texas. According to the Official Public Records of Dallas County, Texas on March 10, 2017, the Shortleaf Property was sold to one FRANKIE L. WILLIAMS ("WILLIAMS") by a company named SHEPHERD PLACE HOMES, INC. ("SPH") and title to the Shortleaf Property was conveyed from SPH to WILLIAMS via warranty deed with vendor's lien (the "Warranty Deed"). A true and correct copy of said Warranty Deed is attached hereto as "Exhibit 19," and incorporated by reference as if fully set forth herein.

66.     According to the Dallas Central Appraisal District, SPH owned the Shortleaf Property since May 25, 2007 and GREYSTONE never held title to the Shortleaf Property (the "DCAD History"). A true and correct copy of said DCAD History is attached hereto as "Exhibit 20," and is incorporated by reference as if fully set forth herein.

67.     In March 2017, in an attempt to dissuade the VAN ROOYENS from filing a lawsuit, RYAN on behalf of GREYSTONE provided the VAN ROOYENS a promissory note wherein GREYSTONE agreed to repay the VAN ROOYENS' deposit with interest (the "Promissory Note"). A true and correct copy of said Promissory Note is attached hereto as "Exhibit 21," and is incorporated by reference as if fully set forth herein. Not surprisingly, GREYSTONE never made a single payment to the VAN ROOYENS pursuant to the terms of the Promissory Note.

68.     After it became apparent Defendants were engaged in a fraudulent scheme against the VAN ROOYENS, the VAN ROOYENS incurred a $195.00 in fees to remove PHILLIP RYAN – TX as the registered agent of JGL.

69.     Upon information and belief, GREYSTONE, SYCAMORE, PHILLIP RYAN, and PHILLIP RYAN – TX were formed as a sham to perpetrate a fraud on the VAN ROOYENS.

70.     Upon information and belief, GREYSTONE, SYCAMORE, PHILLIP RYAN, and PHILLIP RYAN – TX are mere tools or business conduits of RYAN, TISSUE, CLEMONS, REITER, and MCRAE.

71.     Upon information and belief, GREYSTONE, SYCAMORE, PHILLIP RYAN, and PHILLIP RYAN – TX were used by RYAN, TISSUE, CLEMONS, REITER, and MCRAE to protect against the discovery of a crime or to justify a wrong.

72.     Upon information and belief, GREYSTONE, SYCAMORE, PHILLIP RYAN, and PHILLIP RYAN – TX were and/or are inadequately capitalized by RYAN, TISSUE, CLEMONS, REITER, and MCRAE with the effect of creating an injustice.

## IV.     CLAIMS AGAINST DEFENDANTS

**Claim 1:     Use of Income Derived from a Pattern of Racketeering Activity to Invest in the Acquisition, Establishment and/or Maintenance of an Enterprise Affecting Interstate Commerce [18 U.S.C. §§1961(5) and 1962(a)]**

73.     The VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

74.     Title 18 §1961(1) defines "racketeering activity" as including "any act which is indictable under any of the following provisions of title 18, United States Code: … §1341 (relating to mail fraud), §1343 (relating to wire fraud) … §1952 (relating to racketeering) … §1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) … ."

75.     By soliciting the VAN ROOYENS purchase of the Bumelia Property (which doesn't exist) via mail, Defendants violated Title 18 U.S.C. § 1341.

76.     By soliciting the VAN ROOYENS purchase of the Bumelia Property (which doesn't exist) via e-mail, Defendants violated Title 18 U.S.C. § 1343.

77.     By soliciting the VAN ROOYENS purchase of the Devilwood Property (which doesn't exist) via mail, Defendants violated Title 18 U.S.C. § 1341.

78.     By soliciting the VAN ROOYENS purchase of the Devilwood Property (which doesn't exist) via e-mail, Defendants violated Title 18 U.S.C. § 1343.

79.     By soliciting the VAN ROOYENS purchase of the Shortleaf Property (which doesn't exist) via mail, Defendants violated Title 18 U.S.C. § 1341.

80.     By soliciting the VAN ROOYENS purchase of the Shortleaf Property (which doesn't exist) via e-mail, Defendants violated Title 18 U.S.C. § 1343.

81.     By using the mail to solicit the VAN ROOYENS purchase of the Shortleaf Property (which Defendants never owned) and, upon information and belief, distributing the Deposit paid by the VAN ROOYENS, Defendants violated Title 18 U.S.C. § 1952.

82.     At various times and places, partially enumerated above, Defendants RYAN, TISSUE, CLEMONS, REITER, and MCRAE used income derived from a pattern of racketeering activity to invest, directly or indirectly, part of such income, in the acquisition of an interest in, or the establishment or operation of, an enterprise affecting foreign or interstate commerce.

83.     At various times and places, partially enumerated above, Defendants RYAN, TISSUE, CLEMONS, REITER, and MCRAE acquired, maintained, directly or indirectly, an interest and/or control of an enterprise engaged in, or the activities of which affect, interstate or foreign commerce.

84.     At various times and places, partially enumerated above, Defendants RYAN, TISSUE, CLEMONS, REITER, and MCRAE were employed by or associated with an enterprise engaged in or whose activities affected interstate or foreign commerce and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs thought a pattern of racketeering activity.

85.     At various times and places, partially enumerated above, Defendants RYAN, TISSUE, CLEMONS, REITER, and MCRAE conspired to engage in activities in violation of Title 18 U.S.C. §1962 (a) – (c).

86.     At various times and places, partially enumerated above, Defendants devised or intended to devise a scheme or artifice to defraud, or to obtain money by means of false or fraudulent pretenses, representations, or promises, or sold, disposed of, exchanged, distributed, supplied, or furnished for an unlawful use an obligation, security, or other article to the VAN ROOYENS for the purpose of executing a scheme or artifice against the VAN ROOYENS, knowingly placed in a post office or authorized depository for mail matter, matters or things in furtherance of their scheme or artifice to defraud or obtain money by means of false or fraudulent representations, and therefore, engaged in mail fraud against the VAN ROOYENS.

87.     At various times and places, partially enumerated above, Defendants devised or intended to devise a scheme or artifice to defraud, or obtained money by means of false or fraudulent pretenses, representations, or promises, by transmitting or causing to be transmitted by means of wire, radio, or television communication in interstate commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice to defraud the VAN ROOYENS.

88.     At various times and places, partially enumerated above, Defendants used the mail or facilities in interstate or foreign commerce with the intent to distribute the proceeds of their unlawful activity, or otherwise promoted, managed, established, carried on, or facilitated the promotion, management, establishment, or carrying on, of their unlawful activity, and thereafter, distributed or attempted to distribute the proceeds of their unlawful activity or promoted, managed, established, carried on, or facilitated or attempted to promote, manage, establish, carry on or facilitate their unlawful activity against the VAN ROOYENS.

89.     The VAN ROOYENS request the Court award treble damages against the Defendants jointly and severally in the amount of One Hundred Forty-Two Thousand Eighty-Five and 00/100 Dollars ($142,785.00) plus costs of this suit and reasonable attorneys' fees.

**Claim 2:        Statutory Fraud**

90.     To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

91.     Defendants entered into a transaction with the VAN ROOYENS involving real estate in the State of Texas (the "Transaction").

92.     During the Transaction, Defendants made false representations of fact, false promises, or benefitted by not disclosing that a third party's representations or promises were false.

93.     Defendants' false representations and/or promises were made for the purpose of inducing the VAN ROOYENS to enter into the Transaction.

94.     The VAN ROOYENS relied on the false representations and/or promises by paying the Deposit and executing various contracts, including, but not limited to, the Sales Agreement, the Management Agreement and the Lease Guaranty.

95.     The VAN ROOYENS' reliance on Defendants' false representations and/or promises caused them to suffer actual damages in the amount of $47,595.00.

96.     The VAN ROOYENS request the Court award exemplary damages against the Defendants jointly and severally.

**Claim 3:      Common Law Fraud**

97.     To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

98.     Defendants made false representations of material fact to the VAN ROOYENS with regard to the VAN ROOYENS' purchase of the Bumelia Property, Devilwood Property and/or the Shortleaf Property from GREYSTONE, and the various misrepresentations made by Defendants related to these transactions and/or agreements related to these transactions.

99.     When Defendants made the false representations of material fact, Defendants knew the representations were false or made the representations recklessly, as a positive assertion, and without knowledge of its truth.

100.    Defendants made the representations with the intent that the VAN ROOYENS act on the false representations of material fact.

101.    The VAN ROOYENS relied on the false representations of material fact by providing funds to GREYSTONE and entering into various agreements, including, but not limited to, the Sale Agreement, Management Agreement, and the Lease Guaranty.

102.     Defendants' false representations of material fact caused the VAN ROOYENS to suffer actual damages in the amount of Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00).

103.     The VAN ROOYENS request the Court award exemplary damages against the Defendants jointly and severally.

**Claim 4:       Money Had & Received**

104.     To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

105.     Defendant GREYSTONE holds the Deposit in the amount of Forty-Six Thousand Two Hundred Fifty and 00/100 Dollars ($46,250.00).

106.     PHILLIP RYAN holds the Three Hundred Fifty and 00/100 Dollars ($350.00) the VAN ROOYENS paid to PHILLIP RYAN as an escrow fee.

107.     The Forty-Six Thousand Two Hundred Fifty and 00/100 Dollars ($46,250.00) and the Three Hundred Fifty and 00/100 Dollars ($350.00) in equity and good conscience belongs to the VAN ROOYENS.

**Claim 5:       Breach of Contract**

108.     To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

109.     The VAN ROOYENS executed the Sale Agreement with GREYSTONE.

110.     The VAN ROOYENS executed the Lease Guaranty with GREYSTONE.

111.    The VAN ROOYENS paid the Deposit to GREYSTONE in accordance with the terms of the Sale Agreement.

112.    The VAN ROOYENS were ready, willing, and able to fund the purchase of the Bumelia Property and/or Shortleaf Property.

113.    GREYSTONE breached the Sale Agreement by failing to build the Bumelia Property and/or Shortleaf Property.

114.    GREYSTONE breached the Lease Guaranty by failing to pay the VAN ROOYENS monthly rental payments of $1,550.00.

115.    The VAN ROOYENS suffered damages for GREYSTONE's breach of the Sale Agreement in the amount of Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00).

116.    The VAN ROOYENS suffered damages for GREYSTONE's breach of the Lease Guaranty in the amount of $55,800.00.

**Claim 6:        Declaratory Judgment for a Constructive Trust**

117.    To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

118.    Defendants obtained Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00) through a scheme or artifice to defraud and/or or to obtain money from the VAN ROOYENS by means of false or fraudulent pretenses, representations, or promises made to the VAN ROOYENS.

119.    Because the Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00) can be traced directly to the Defendants, the VAN ROOYENS seeks a declaratory

judgment for the imposition of a constructive trust in favor of the VAN ROOYENS on all property within the possession or control of any of the Defendants directly or equitably traceable to the Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00).

120.    Accordingly, the Court should declare that none of the Defendants are entitled to use, disburse, spend, or otherwise transfer any part of the Forty-Seven Thousand Five Hundred Ninety-Five and 00/100 Dollars ($47,595.00).

**Claim 7:        Piercing the Corporate Veil**

121.    To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

122.    The corporate forms of GREYSTONE; PHILLIP RYAN; SYCAMORE; and PHILLIP RYAN – TX should be disregarded because the entities were used as a sham to perpetrate a fraud; were organized and operated as a mere tool or business conduit of RYAN, TISSUE, CLEMONS, REITER, and MCRAE; were used to protect against the discovery of a crime or to justify a wrong; and were inadequately capitalized with the effect of creating an injustice.

123.    Consequently, the VAN ROOYENS request the Court hold RYAN, TISSUE, CLEMONS, REITER, MCRAE, GREYSTONE; PHILLIP RYAN; SYCAMORE; and PHILLIP RYAN – TX jointly and severally liable for the damages caused to the VAN ROOYENS.

**Claim 8:        Conspiracy**

124.    To the extent not inconsistent, Plaintiffs VAN ROOYENS re-allege and incorporate paragraphs 14 through 72 of this Complaint by reference as if fully set forth in this claim.

125.    Defendants are members of a combination of two or more persons.

126.    The object of the combination was to accomplish an unlawful purpose.

127.    The Defendants had a meeting of the minds on the object or course of action.

128.    One or more of the members of the Defendants committed an unlawful, overt act to further the object or course of action.

129.    The VAN ROOYENS suffered damages as a proximate result of the wrongful act committed by one or more of the Defendants.

130.    The VAN ROOYENS request that the Court hold the Defendants jointly and severally liable for the damages suffered by the VAN ROOYENS.

## V.  PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs CATHERINE VAN ROOYEN and CORNELIUS JOHANNES VAN ROOYEN respectly pray this Court enter a judgment against Defendants GREYSTONE HOME BUILDERS, LLC; PHILLIP RYAN, LLC; PHILLIP RYAN TEXAS, LLC; SYCAMORE HOMES, LLC; SEAN RYAN; DAVID CLEMONS; SEAN TISSUE; JUSTIN MCRAE  and ANGELA REITER, jointly and severally, as follows:

1.    $47,595.00 in actual damages;

2.    $95,190.00 for violation of the Racketeer Influenced and Corrupt Organizations Act in accordance with 18 U.S.C. §1964;

3.    Exemplary damages for common law and/or statutory fraud;

4.    a declaratory judgment imposing a constructive trust and attachment against all property traceable to the VAN ROOYENS' funds in the amount of at least $47,595.00 held in any form by any of the Defendants;

5.    Attorneys' fees as recoverable;

6.    Pre-judgment and post judgment interest;

7.      Court costs; and

8.      Such further and other relief, at law or in equity, to which Plaintiffs have shown themselves entitled.

Dated:  August 29, 2017

                                        Respectfully submitted,

                                         _/s/Michael H. Myers_____
                                        Michael H. Myers
                                        Texas State Bar No. 24032779
                                        **The Silvera Firm**
                                        17070 Dallas Parkway, Suite 100
                                        Dallas, Texas 75248
                                        Telephone:  972.715.1750
                                        Facsimile: 972.715.1759
                                        E-mail:  mmyers@silveralaw.com

                                        **COUNSEL     FOR     PLAINTIFFS
                                        CATHERINE   VAN   ROOYEN   and
                                        CORNELIUS   JOHANNES   VAN
                                        ROOYEN**