IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CATHRINE VAN ROOYEN and          §
CORNELIUS JOHANNES VAN           §
ROOYEN,                          §
                   Plaintiffs,   §
                                 §  Civil Action No. 3:17-CV-2298-D
VS.                              §
                                 §
GREYSTONE HOME BUILDERS,         §
LLC, et al.,                     §
                                 §
                   Defendants.   §

MEMORANDUM OPINION
AND ORDER

Defendants[1] move to dismiss this action under Fed. R. Civ. P. 12(b)(2) for lack of

personal jurisdiction, or under Rule 12(b)(3) for improper venue. Alternatively, they move

to transfer venue under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses

and in the interest of justice. For the following reasons, the court denies the motions to

dismiss for lack of personal jurisdiction or improper venue, grants the alternative motion to

transfer venue under 28 U.S.C. § 1404(a), and transfers this action to the Eastern District of

Michigan.

I

Plaintiffs Cathrine Van Rooyen and Cornelius Johannes Van Rooyen ("the Van

Rooyens" or "plaintiffs"), both residents of the Republic of South Africa, were approached

_____

[1]The motion is filed by all defendants except defendant Angela Reiter. As explained
below, this ruling applies to her as well. *See infra* § IV(D)(2).

by Peter Weaver ("Weaver") in early 2016 about purchasing rental property in Dallas.[2]  The

Van Rooyens received marketing materials advertising new construction rental properties

built in high demand areas by defendant Greystone Home Builders, LLC ("Greystone").  The

marketing materials advertised a three-year rental guarantee, completed construction within

six months, and "clear title" to the property.  Defendant Angela Reiter ("Reiter") directed and

facilitated the transaction, and plaintiffs signed a property management agreement ("First

Property Management Agreement") with defendant Phillip Ryan, LLC ("Phillip Ryan").

In February 2016 the Van Rooyens executed a Real Estate Purchase and Sale

Agreement ("Real Estate Agreement") to purchase a piece of property referred to as the

"Bumelia property," and wired a deposit to Phillip Ryan (the designated escrow agent).

Greystone provided a deposit receipt to the Van Rooyens, however, that identified a different

property (the Devilwood property) than was the subject of the Real Estate Agreement.  Reiter

represented to the Van Rooyens that the Bumelia property had been purchased by another

investor, and that the Devilwood property had been substituted.  Weaver then offered the Van

Rooyens the option to purchase a third property (the Shortleaf property) because the

Devilwood property had also already been sold.  The Van Rooyens allege that the Bumelia

and Devilwood properties do not actually exist.

---

[2]As the court explains below, in a no-hearing situation, the court accepts as true the
uncontroverted allegations in plaintiffs' complaint and resolves in favor of plaintiffs any
factual conflicts posed by the affidavits.  Accordingly, the court recounts the evidence based
on the uncontroverted allegations in plaintiffs' complaint.  Defendants have not presented
a controverting affidavit in support of their motion to dismiss.

In March 2016, per defendants' advice, the Van Rooyens created an entity called Jasmine Green, LLC ("JGL") and opened a bank account in the United States to facilitate the transaction for the Shortleaf property. The Van Rooyens paid Phillip Ryan and Greystone, respectively, the relevant fees for creating JGL and the bank account. Phillip Ryan Texas, LLC ("Ryan Texas") was designated as JGL's registered agent.

In May 2016 Reiter sent the Van Rooyens photographs depicting a residence under construction. Reiter then convinced the Van Rooyens to sign JGL's initial operating agreement, which transferred operational control of JGL to Ryan Texas. Defendant David Clemons ("Clemons") assured the Van Rooyens that construction would close around July 19, 2016. Over the next several months, Clemons requested and received several addenda to the Real Estate Agreement reflecting later closing dates.

In September 2016 the Van Rooyens executed another property management agreement ("Second Property Management Agreement") naming Clemons, a manager of Ryan Texas, as the property manager. Later, defendant Sean Tissue ("Tissue") sent the Van Rooyens a lease guarantee promising three years of lease payments. In October 2016 Clemons sent the Van Rooyens photographs of a nearly completed residence.

In November 2016 Greystone sent the Van Rooyens an email canceling the Real Estate Agreement. Further investigations revealed that Greystone never owned the Shortleaf property. Phillip Ryan, on behalf of Greystone, executed a promissory note ("Note") under which Greystone promised to pay back the deposit amount with interest. Suspecting that defendants were engaged in a fraudulent scheme, the Van Rooyens paid a fee to remove

Ryan Texas as the registered agent of JGL. Defendants have failed to return any money or make any payments on the Note.

In 2017 the Van Rooyens brought this lawsuit against Greystone, Phillip Ryan, Ryan Texas, Sycamore Homes, LLC, Sean Ryan, Clemons, Tissue,[3] Justin McRae, and Reiter, alleging a civil RICO[4] claim and claims for statutory fraud, common law fraud, money had and received, breach of contract, declaratory judgment for a contructive trust, piercing the corporate veil, and conspiracy. All defendants except Reiter now move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, or under Rule 12(b)(3) for improper venue, or, alternatively, to transfer venue under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. The Van Rooyens oppose the motions.[5]

II

The court begins by addressing defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

A

"When a nonresident defendant presents a motion to dismiss for lack of personal

_____

[3]Tissue has filed a suggestion of bankruptcy, and the court has administratively closed the action against him, without prejudice to reopening the action after the bankruptcy is concluded or the stay is lifted. The administrative closure does not apply to any other party.

[4]Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§1961(5) and 1962(a).

[5]The Van Rooyens request that, if the court is inclined to dismiss for lack of personal jurisdiction, it permit them to conduct jurisdictional discovery. Because the court is not granting defendants' motion for dismiss for lack of personal jurisdiction, it denies the request to conduct jurisdictional discovery.

jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985)). The determination whether a federal district court has in personam jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir.1999).[6] Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir.2000).

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he

---

[6]The Van Rooyens do not contend that the court has personal jurisdiction based on RICO's nationwide service of process provision, 18 U.S.C. § 1965.

"should reasonably anticipate being haled into court" in the forum state. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999) (footnotes omitted). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir.1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, ___ U.S. ____, 134 S. Ct. 746, 751 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v.*

- 6 -

*Brown*, 564 U.S. 915, 919 (2011)).

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction. *Latshaw*, 167 F.3d at 211 (footnotes omitted).

"This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

B

The Van Rooyens maintain that the court can exercise general jurisdiction over defendant Ryan Texas. The court agrees.

The uncontroverted allegations of plaintiffs' complaint, in combination with the Second Property Management Agreement, show that Ryan Texas is a Texas corporation with its head office located in Dallas. The complaint also alleges that Ryan Texas was the registered agent for JGL, another Texas-based corporation located in Dallas. The purpose of forming JGL, as reflected in the Certificate of Formation, was "the transaction of any and all lawful business for which limited liability companies may be organized under the Texas

Business Organizations Code." Notice of Removal Ex. 9, at 1. As an agent for JGL, Ryan Texas would therefore be acting pursuant to the rules and protections of Texas law. Both the Property Management Agreement and the Operating Agreement between Ryan Texas and JGL contain clauses agreeing to be governed by the laws of the state of Texas. The court holds that the Van Rooyens have made a prima facie showing that Ryan Texas's contacts with the state of Texas are so constant and pervasive "'as to render [Ryan Texas] essentially at home in [Texas].'" *Daimler AG*, 134 S. Ct. at 751 (quoting *Goodyear*, 564 U.S. at 919). They have therefore shown that the court has general personal jurisdiction over Ryan Texas.

C

The Van Rooyens contend that the court can exercise specific jurisdiction over the remaining defendants. Again, the court agrees.

"[A] single communication directed at the forum can establish personal jurisdiction where the content of that communication gives rise to an intentional tort for which jurisdiction is sought." *Fairchild v. Barot*, 946 F. Supp. 2d 573, 578 (N.D. Tex. 2013) (Lynn, J.) (brackets added) (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999)). The complaint alleges that all defendants, at various times, communicated fraudulent information related to the sale of real estate in Texas, and that plaintiffs' claims relate to defendants' attempt to sell the Van Rooyens real estate in the state of Texas, and/or fraudulent representations made that were related to the sale of real estate in Texas.

Defendants maintain that the court cannot exercise personal jurisdiction because the Van Rooyens are residents of South Africa, defendants are all residents of Michigan, all

communications between the parties occurred over the Internet, and no conduct occurred in Texas. They maintain that the Van Rooyens cannot rely on the fact that the contract involved the sale of real property in Texas, and that their claims arise out of conduct in Texas, because the parties entered into the Note, their claim is more properly characterized as one for breach of the Note, and the Note was entered into by a Michigan limited liability company and foreign residents and is governed by Michigan law. Therefore, any alleged breaches would have occurred in Michigan, not Texas.

The court disagrees with defendant's position because the Van Rooyens have made a prima facie showing that defendants purposely directed their fraudulent activities toward the state of Texas. *See, e.g., Int'l Transactions, Ltd. v. Embotelladora Agral Reionmontana SA de CV*, 277 F. Supp. 2d 654, 667-69 (N.D. Tex. 2002) (Fish, C.J.) (concluding that Mexican corporation was subject to personal jurisdiction in Texas because it directed activities at the forum, and the plaintiff, a resident of the Cayman Islands, brought an action related to those activities); *Rattner v. Contos*, 293 S.W.3d 655, 662 (Tex. App. 2009, no pet.) (concluding that exercise of specific personal jurisdiction was proper in dispute over Texas real estate where both parties were residents of California). The marketing materials,[7] Real

---

[7]The marketing materials provide numerous economic, geographic, and demographic figures clearly intended to demonstrate the benefits of investing in Dallas real estate. The materials also specifically advertise 16 separate addresses in the "South Oak Development."

Estate Agreement,[8] lease guaranty, and other communications[9] directly refer to property and activities[10] in Texas.  And defendants' reliance on the fact that the Van Rooyens signed a promissory note that provides that Michigan law controls is insufficient to defeat the Van Rooyens' prima facie showing that defendants directed fraudulent activities toward the state of Texas.  Fairly read, the complaint charges that the Note was part and parcel of defendants' fraud.  *See* Compl. ¶ 67 (alleging that Note was provided in attempt to dissuade the Van Rooyens from filing a lawsuit, and that Greystone's failure to make any payments on the Note was not surprising).

D

Having determined that the Van Rooyens have made a prima facie showing of sufficient minimum contacts for the exercise of general and specific jurisdiction, the court must next consider whether requiring defendants to litigate this suit in Texas comports with "fair play and substantial justice."  *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (citation omitted).

It is defendants who "must present a 'compelling case' that jurisdiction is

_____

[8]The original Real Estate Agreement specifies that the property will be in "Dallas, TX 75253."  Notice of Removal Ex. 3, ¶ 1.

[9]Two Receipt of Deposit exhibits demonstrate that $46,600 was delivered to purchase the "2013 Devilwood Court, Dallas TX 75253" and the "13404 Shortleaf Drive, Dallas TX 75253" properties.  The Guarantee of Residential Lease Agreement purportedly guaranteed rental income for 13404 Shortleaf Drive.

[10]Assuming *arguendo* that the photographs the Van Rooyens received from Greystone are what Greystone represented them to be, there is evidence of construction activities taking place in Texas.

unreasonable and incompatible with 'fair play and substantial justice.'" *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 377 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *Burger King*, 471 U.S. at 477-78). "It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown." *Id.* (quoting *Wien Air*, 195 F.3d at 215 (alterations in original)).

Defendants contend that litigating the case in Texas rather than Michigan would pose a substantial burden because they would need to retain local counsel, would be required to travel repeatedly to Texas, and their witnesses are likely residents of Michigan. They posit that the Van Rooyens would not incur a similar burden and that the cost of litigating in Michigan may even be lower. And they make other arguments, such as citing *Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, ___ U.S. ___ , 134 S. Ct. 568, 580 (2013), that appear to blur the distinction between what it necessary to support a transfer under 28 U.S.C. § 1404(a) and to make a compelling case that a suit should be dismissed under the Fourteenth Amendment Due Process Clause because exercising jurisdiction would be unreasonable and incompatible with fair play and substantial justice. But defendants have not made the required compelling case that is required for dismissal where the minimum contacts requirement has been satisfied.

The court therefore denies the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

Defendants move in the alternative to dismiss for improper venue or to transfer venue under § 1404(a). Because the court is transferring this case under § 1404(a), and because it would not dismiss the case (it would transfer the case) even if venue were improper in this district, the court will assume *arguendo* that venue is proper and will proceed to defendants' motion under § 1404(a).[11]

28 U.S.C. § 1404(a) codifies "the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine*, 134 S.Ct. at 580. Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In cases where there is no forum-selection clause, district courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 134 S.Ct. at 581. District courts analyze § 1404(a) motions under the familiar private- and public-interest factors[12] and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"

---

[11]In their response, the Van Rooyens request that, if the court is inclined to determine that the Eastern District of Michigan is the proper venue, they be permitted to file an amended complaint that corrects any defects in the pleadings. Because the filing of an amended complaint would not change the § 1404(a) analysis, the court denies this request.

[12]In *Atlantic Marine* the Court identified non-exclusive private- and public-interest factors. *Atl. Marine*, 134 S.Ct. at 581 n.6.

*Id.* at 581 (quoting § 1404(a)).

But in cases where there is a valid forum-selection clause, "[t]he calculus changes," because the clause "'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). In that circumstance, district courts must "adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer . . . should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* (citation omitted). Accordingly, in a case involving a forum-selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 575.

The Van Rooyens' response to defendants' § 1404(a) motion consists of the following two paragraphs:

Defendants allege that pursuant to 28 U.S.C. §1404(a) the convenience of the parties and witness dictate venue in the Eastern District of Michigan. Defendants claim that both private and public concerns require venue in the Eastern District of Michigan. The private concerns Defendants cite as set forth in the *TransFirst Grp., Inc. v. Magliarditi* case are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017).

The relative ease of access of proof to establish the VAN ROOYENS' claims against Defendants related to representations made related to a real estate transaction which was to be performed in Dallas, Texas would require venue in the Northern District of Texas. The availability to compel a witness to: (1) whether Defendants actually commenced construction of any of the houses they attempted to sell to the VAN ROOYENS; (2) any construction activity of the Defendants in Dallas, Texas; and (3) whether Defendants defrauded any other individuals since their marketing materials indicate Dallas, Texas is one of a handful of cities in the U.S. where GREYSTONE is building build-to-rent single family residences, would all dictate venue in the Northern District of Texas. The cost of a willing witness to attend related to this matters would also dictate venue in the Northern District of Texas. Moreover, allegations of fraud related to real estate located in Texas are governed by the laws of the State of Texas, not Michigan.

Ps. Br. at 10-11.

IV

The court addresses first whether this litigation is controlled by a valid forum-selection clause: here, the forum-selection clause is contained in the Note.

A

Although federal law "governs the *enforceability* of forum selection clauses, it does not govern the *interpretation* of such clauses." *DBS Sols. LLC v. Infovista Corp.*, 2016 WL 3926505, at *2 (N.D. Tex. July 21, 2016) (Lynn, C.J.) (emphasis in original) (citing *Weber v. PACT XXP Techs. AG*, 811 F.3d 758, 770 (5th Cir. 2016)). Federal courts sitting in diversity must apply the forum state's choice-of-law rules. *Weber*, 811 F.3d at 770.

Texas courts "permit choice-of-law agreements and the default position is that they are enforceable." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015); *see also Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014). The Note contains a choice of law clause that provides that it is governed by Michigan law. Notice of Removal Ex. 21, ¶ 14 ("This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan[.]").

Under Michigan law, the court interprets the Note using the rules applied to the interpretation of contracts. "The fundamental goal of contract interpretation is to determine and enforce the parties' intent by reading the agreement as a whole and applying the plain language used by the parties to reach their agreement." *Dobbelaere v. Auto-Owners Ins. Co.*, 740 N.W.2d 503, 505 (Mich. Ct. App. 2007). "[A]ll its parts are to be harmonized so far as reasonably possible; and . . . no part is to be taken as eliminated or stricken by some part unless such a result is fairly inescapable." *Comerica Bank v. Cohen*, 805 N.W.2d 544, 548 (Mich. Ct. App. 2010) (quotation marks and citation omitted). The Note's merger clause provides:

> The Agreement constitutes the entire Agreement among the Parties with respect to their subject matter. This Agreement supersedes and terminates any and all other previous or contemporaneous communications, representations, understanding, agreements, negotiations, and discussions, whether oral or written, between the Parties with respect to the subject matter.

Notice of Removal Ex. 21, ¶ 10. The clause specifically uses the phrase "with respect to *their* subject matter." *See Jacuzzi, Inc. v. Franklin Elec. Co.*, 2008 WL 190319, at *4 (N.D. Tex. Jan. 22, 2008) (Fitzwater, C.J.) (discussing interpretation of various merger clauses) (emphasis added). The plural possessive pronoun indicates that the clause is intended to identify all agreements reached between Greystone and the Van Rooyens as subject to the clause. The second sentence then describes the effect of the clause, in this case to supersede and terminate all other previous or contemporaneous agreements, negotiations, and discussions "with respect to *the* subject matter." Notice of Removal Ex. 21, ¶ 10 (emphasis added). In this case, the article "the" is used in place of the possessive pronoun to reference the previously described subject matter.

The intention of the merger clause to supersede the Real Estate Agreement—among all other previous or contemporaneous agreements—is made more evident by the Note's recital, which specifically describes the Real Estate Agreement's cancellation as the reason for the Note.[13] As such, the court concludes that any claims against Greystone relating to the

---

[13]The Note states:

> Whereas, Greystone and Investor entered into a Purchase and Sale Agreement for the construction of an investment property

Real Estate Agreement are subject to the terms of the Note and its merger clause.

B

Having concluded that the Note's forum-selection clause is applicable to this lawsuit, the court now turns to the question whether it is enforceable.

1

Federal law governs whether the Note's forum-selection clause is binding in this action. *See Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997) ("The proper law to apply to [determine the enforceability of a forum-selection clause] is federal, whether jurisdiction be based on diversity, a federal question, or some combination of the two."). "Under federal law, forum-selection clauses are presumed enforceable, and the party resisting enforcement bears a 'heavy burden of proof.'" *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008) (quoting *Haynsworth*, 121 F.3d at 963 (citation omitted)). "Such clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007) (per curiam) (quoting *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 10 (1972)). A forum-selection clause may be considered unreasonable if

---

in the United States, that was unilaterally cancelled by Greystone due to unforseen circumstances along with uncertainty in securing in several investors obtaining the required long term financing on the properties.

Notice of Removal Ex. 21 at 1.

> (1) the incorporation of the forum selection clause into the
> agreement was the product of the fraud or overreaching; (2) the
> party seeking to escape enforcement "will for all practical
> purposes be deprived of his day in court" because of the grave
> inconvenience or unfairness of the selected forum; (3) the
> fundamental unfairness of the chosen law will deprive the
> plaintiff of a remedy; or (4) enforcement of the forum selection
> clause would contravene a strong public policy of the forum
> state.

*Id.* (quoting *Haynsworth*, 121 F.3d at 963). "To qualify as unreasonable, the fraud and

overreaching must be specific to the forum selection clause." *Id.* (quoting *Haynsworth*, 121

F.3d at 963).

2

The Van Rooyens' opposition to defendants' § 1404(a) motion is quoted in full above.

In the two paragraphs quoted, they have not met their heavy burden of proving that

enforcement of the forum-selection clause would be unreasonable under the circumstances.

First, although the record supports the inference that they were induced to enter into the Note

as part of defendants' overall fraud, they have not shown that the fraud was specific to the

forum-selection clause itself.  Second, they have not shown that they will for all practical

purposes be deprived of their day in court because of the grave inconvenience or unfairness

of the selected forum.  They will simply litigate in one United States forum rather than

another, traveling from South Africa to Michigan rather than to Texas.  Third, there has been

no showing that applying Michigan law will deprive them of a remedy.  Nor have they

shown that enforcing the forum-selection clause would contravene a strong public policy of

the forum state.

C

Having determined that the forum-selection clause is enforceable, the court now considers the public interest factors relevant to a § 1404(a) transfer of venue.

1

The first public interest factor evaluates the comparative administrative difficulties due to court congestion in the potential venues. Both parties fail to address this issue. The Northern District of Texas currently has three judicial vacancies (a fourth was filled on March 5, 2018), while the Eastern District of Michigan has one.[14] This court is heavily congested relative to the Eastern District of Michigan.[15] The court concludes that this factor weighs in favor of transferring the case to the Eastern District of Michigan.

2

The second public interest factor evaluates the local interest in the dispute. "This factor generally favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (Fitzwater, C.J.) (citing *Spiegelberg v. Collegiate Licensing Co.*, 402 F. Supp. 2d 786, 792 (S.D. Tex. 2005)). The Van Rooyens contend that, because Greystone breached

---

[14]*See* Current Judicial Vacancies, UNITED STATES COURTS (last visited Mar. 12, 2018), http://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies.

[15]*See* U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2017), UNITED STATES COURTS (last visited Feb. 27, 2018), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2017.pdf

the Real Estate Agreement related to a Texas property, the actions giving rise to this lawsuit occurred in Texas. Defendants maintain that the only action surviving the execution of the Note is for breach of that Note, which would have occurred in Michigan. The Note refers, however, to Greystone's unilateral cancellation of the Real Estate Agreement. Moreover, defendants do not dispute that the property subject to the Real Estate Agreement is located in the Northern District of Texas, and defendants' brief describes the execution of the Note as an attempt to resolve the breach of the Real Estate Agreement for a property in Texas. The events giving rise to this lawsuit pertain to a real estate transaction in Texas and an attempted resolution for that transaction's failure. This factor weighs in favor of retaining the case in this district.

3

The third factor considers the familiarity of the forum with the law that will govern the case. The Note contains a choice-of-law clause that provides that Michigan law governs. Although this court is capable of applying Michigan law, a court sitting in Michigan has greater familiarity with Michigan law. *See, e.g., Abramov v. Otis Elevator Co.*, 2011 WL 5081560, at *8 (N.D. Tex. Oct. 25, 2011) (Fitzwater, C.J.) (concluding that although court could apply Nevada law, court in Nevada would be more familiar with Nevada law). Accordingly, the court holds that this factor weighs in favor of transfer.

4

The fourth public interest factor considers the avoidance of unnecessary problems of conflict of laws or the application of foreign law. There is no suggestion in the briefing that

there is a problem of conflict of laws or of applying foreign laws. The court concludes that this factor is neutral.

5

Having analyzed the public-interest factors, the court concludes that the Van Rooyens are unable to overcome the governing forum-selection clause. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 134 S.Ct. at 581 (first alteration added) (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring)). "As the part[ies] acting in violation of the forum-selection clause, [Van Rooyens] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583.

> Because [the public-interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. Although it is "conceivable in a particular case" that the district court "would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause," such cases will not be common.

*Id.* at 582 (quoting *Stewart*, 487 U.S. at 30-31). Given the analysis of the factors, the Van Rooyens have failed to meet their burden of demonstrating that this is an unusual and uncommon case in which the public-interest factors overwhelmingly disfavor a transfer.

D

The court now addresses the impact of the forum-selection clause as to the nonsignatory defendants and non-moving defendant.

The Fifth Circuit has recognized estoppel as one of six theories for binding a nonsignatory to a contract's arbitration clause. *See Compana LLC v. Mondial Assistance SAS,* 2008 WL 190522, at *3 (N.D. Tex. Jan 23, 2008) (Fitzwater, C.J.).[16] These principles may also make a contract's forum-selection clause binding on nonsignatories. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006) (holding that non-signatory to contract was bound by contract's forum-selection clause based on estoppel). "[A]pplication of equitable estoppel is warranted when the signatory to the contract containing [a forum-selection] clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (alterations added). When claims are "intertwined with and dependent upon" an agreement, it is within the district court's discretion to give effect to that agreement's terms in claims against nonsignatories. *See id.* at 528-29 (internal quotation marks omitted) (holding that district court did not abuse its discretion by applying equitable estoppel to compel arbitration of signatories' claim against nonsignatory defendants). Here, the Van Rooyens' claims against

---

[16]The Fifth Circuit has recognized six theories for binding a non-signatory of a contract to the contract's arbitration clause: "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third party beneficiary theory." *Compana LLC*, 2008 WL 190522, at *3 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003)).

the remaining defendants are all "intertwined with and dependent upon" the Real Estate Agreement and Note signed by Greystone. *See id.* Their complaint further demonstrates this by alleging that the individual defendants should be held jointly and severally liable for damages caused by Greystone. The court therefore exercises its discretion to give effect to the forum-selection clause in relation to the moving, nonsignatory defendants.

2

As to the non-moving defendant—Reiter—the court holds that severing this action "and trying [it] as two separate cases in two separate fora would *not* further the goals of § 1404(a), especially where, as here, many material underlying facts overlap and the [events] on which the claims are based are part of a single relationship between the parties." *Cortese v. Evolve Bank & Tr.*, 2015 WL 3539587, at *9 (N.D. Tex. June 5, 2015) (Fitzwater, J.) (emphasis in original) (alterations added). The court therefore exercises *sua sponte* its power to transfer the claims against Reiter together with the other defendants. *See Mills v. Beech Aircraft Corp., Inc.*, 886 F.2d 758, 761 (5th Cir. 1989) ("[Section 1404(a)] transfers may be made *sua sponte*.").[17]

For these reasons, the court holds that the claims against all defendants should be transferred to the Eastern District of Michigan. Defendants' alternative motion to transfer

---

[17]Because all parties had notice of the pending § 1404(a) motion, it is unnecessary to provide them a further opportunity to present their views about the transfer. *But see Moore v. Rohm & Haas Co.*, 446 F.3d 643, 647 (6th Cir. 2006) (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* §§ 3844, 3847-48 (2d ed. 2005)).

venue pursuant to § 1404(a) is granted.

\* \* \*

Accordingly, for the reasons explained, the court denies defendants' motions to dismiss for lack of personal jurisdiction or improper venue, and grants their alternative motion under § 1404(a) to transfer venue for the convenience of the parties and witnesses and in the interest of justice. This case is transferred to the Eastern District of Michigan. The clerk of court shall effect the transfer according to the usual procedure.

**SO ORDERED**.

March 14, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE